L. G. KINYON v. R. E. BROCK, Ex'r. of W. A. HOWELL.

The same strict degree of diligence which was required of a guarantee before and since the war, could not be exacted of him during the war. That forbearance which would amount to *laches* now, was, from the very nature of things, unavoidable then.

Therefore, where in the spring of 1860, A, the testator of the defendant, executed to B a guaranty on the note of C, which note was made on the 12th of March, 1860, and was due on the 1st of September following: *Held*, that the failure of B to sue C during the war, and the subsequent insolvency of C, did not amount to *laches* sufficient to release A from his guaranty.

(The cases of *Ashford* v. *Robinson*, 8 Ired. 114, and *Farrow* v. *Respass*, 11 Ired. 174, cited and approved.)

CIVIL ACTION, for the recovery of money upon a guaranty, tried before *Wilson, J.*, at the Fall Term, 1874, of DAVIE Superior Court, upon the following

### CASE AGREED.

In the spring of 1860, W. A. Howell, the testator of defendant, purchased a tract of land of the plaintiff at the price of $3,500, and in part payment therefor, delivered to the plaintiff a note of hand on S. L. Howell, for the sum of $2,500, dated 12th day of March, 1860, and due on the 1st day of September following. The plaintiff being unwilling to receive said note without other security, W. A. Howell, at the time he

passed it to the plaintiff, executed and delivered to him the following guaranty on a separate piece of paper :

" For value received, I hereby guarantee the note on S. L. Howell of $2,500, to be good and solvent. This 9th day May, 1860.                                        W. A. HOWELL."

On the 11th day of September, 1860, S. L. Howell paid to the plaintiff the sum of $950; and in the month of December, 1860, he paid the further sum of $495. The said S. L. Howell also paid the plaintiff in January, 1864, the sum of $700, in Confederate Treasury notes, which was to be allowed as a payment, to its value, upon the said note of $2,500. No further payments had been made on said note.

S. L. Howell was a brother of the guarantor, W. A. Howell, and lived at the time in the town of Mocksville, Davie county; W. A. Howell lived in said county, some twelve miles from Mocksville; and the plaintiff lived at East Bend, in the county of Yadkin, a distance of about 32 miles from Mocksville.

S. L. Howell was solvent on the 9th May, 1860, and remained solvent until the close of the war in 1865, when by the loss of his slaves and other losses by the result of the war, he became insolvent; in consequence of which, nothing could have been made out of him. In December, 1868, S. L. Howell was declared bankrupt.

(a.) That after the close of the war, W. A. Howell, in a conversation with his son-in-law, Dr. D. W. Kinyon, said that " he expected to have to pay the plaintiff's debt," as he did not " believe that his brother, S. L. Howell, would do so."

(b.) That W. A. Howell and the defendant, R. E. Brock, were both notified since the close of the war, that they were looked to for the payment of plaintiff's debt.

(d.) That W. A. Howell and S. L. Howell had been engaged in the mercantile business in the town of Mocksville a few years prior to the sale of the land before mentioned; and that S. L. Howell was indebted to W. A. Howell, over and above

the note transferred to the plaintiff, on the 9th day of May, 1860, in the sum of $2,500,'or thereabouts, which notes W. A. Howell held, without instituting suit until his death in 1867, and which have never been paid.

(d.) That plaintiff, prior to 1862, placed the note on S. L. Howell in the hands of an attorney for collection, and subsequently instructed him not to sue. (Should the Court consider this as protected as a privileged communication between counsel and client, which they are not compelled to disclose, it is not to be considered as a part of the case.)

The above paragraphs a, b, c, d, if in the opinion of the Court, they are not competent evidence, are not to be considered in making up the decision.

If upon the foregoing statement, or so much thereof as is competent evidence, the Court should be of opinion with the plaintiff, judgment is to be rendered in his favor for the sum of $——, with interest, &c.; otherwise for the defendant.

His Honor being of opinion that the plaintiff by his negligence had lost the right to sue the guarantor, gave judgment against him for costs; from which judgment the plaintiff appealed.

*Furches*, for appellant.
*Bailey* and *Brown*, contra.

SETTLE, J. The record presents this question : Was the defendant discharged from liability by the forbearance of the plaintiff to sue the maker of the note, which the defendant's testator guaranteed ? We may remark in the outset, that the same strict degree of diligence which was required of the guarantee, before and since the war, was not to be exacted of him during the war. In other words, forbearance which would amount to laches now, was from the very nature of things unavoidable then.

With this understanding let us examine the case at bar. The note guarantied did not fall due until the 1st of September, 1860, and on the 11th of that month the plaintiff collected

$950, and again in December of the same year, collected $495.

Of course the guaranty implied that the plaintiff should have a reasonable time to collect the debt after it fell due. *Ashford* v. *Robinson,* 8 Ired., 114.

But suppose he had brought suit immediately upon the maturity of the note, he could not have had execution of his judgment, even in the County Court, before the passage of the Act of 1860–'61, chapter 16, section 8, which stayed all executions and required the sheriff to return them unsatisfied. And let it be borne in mind, that from that time until the close of the war, the courts were practically closed, against the collection of debts, by the various Acts of the General Assembly, passed for that purpose. Perhaps the plaintiff could have collected his debt in Confederate money. Indeed, he did receive $700 of that currency in January, 1864, but we know from the history of the times, that he could not have collected his debt in good money. No such negligence has been shown as would discharge the defendant up to the close of the war, when S. L. Howell became insolvent by the loss of his slaves.

From that time forward the defendant cannot complain of the forbearance of the plaintiff, for he was not required to do a vain thing, and sue an insolvent man, and a guarantor is not discharged simply by the negligence of the other party, but he must also show that he has sustained loss by such negligence. *Ashford* v. *Robinson, supra* ; *Farrow* v. *Respass,* 11 Ired., 174. How could it have helped the defendant for the plaintiff to have sued S. L. Howell, after his insolvency ? The forbearance of the plaintiff to sue for some time after the insolvency of S. L. Howell was, in fact, an indulgence to the defendant.

Without invoking the aid of the evidence objected to, enough appears upon the record to warrant the conclusion that W. A. Howell had full notice of the indulgence extended by the plaintiff to his brother, S. L. Howell, and it does not appear that he ever endeavored to quicken the diligence of the plaintiff. We attach no importance to the fact that the plaintiff

placed the note in the hands of an attorney for collection, and afterward directed him not to sue, which fact, by the way, is objected to on the ground that it was brought to light by a violation of that confidence between attorney and client, which the law protects, for admitting it in its full force, does not affect our conclusion. Doubtless the plaintiff was casting about in his own mind the chances of collecting his debt, and the fact that he determined to sue to day cannot bind him to remain of the same opinion to-morrow, even in the face of stay laws, Confederate money and other obstacles which met him at the threshold of the Temple of Justice.

· The judgment of the Superior Court is reversed, and judgment may be entered here for the plaintiff for the amount agreed upon by the parties in case the Court should be of opinion with the plaintiff.

PER CURIAM. Judgment reversed, and judgment for the plaintiff.